IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCA MORALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>POWER SUPPLY COLLECTIVE, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-00634-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Power Supply Collective, Inc. ("Power Supply")[1] offers a service through which customers place orders for pre-made meals through its website and Power Supply delivers those meals to either self-service refrigerators or—for a fee—to the customer's home. Compl. ¶¶ 2-7 (Dkt. 1). Plaintiff Francisca Moralez contends that Power Supply's self-service refrigerators and ordering process violate the Americans With Disabilities Act ("ADA") and analogous provisions of the California Civil Code, see Cal. Civ. Code § 51.5; Cal. Health & Safety Code § 19959. Compl. ¶¶ 16-46. The parties have now filed cross motions for summary judgment. Pl. Mot. for Summ. J. at 3, 13-14 (Dkt. 70); Def. Mot. for Summ. J. (Dkt. 71). For the following reasons, this Court GRANTS IN PART AND DENIES IN PART Moralez's motion and GRANTS IN PART AND DENIES IN PART Moralez's Power Supply's motion.

I.  **BACKGROUND**

The parties agree on the relevant facts. Power Supply operates a meal-delivery

---

[1] Power Supply has subsequently changed its name to "Territory Foods." Def. Mot. for Summ. J. at 1. For clarity, the Court refers to the Defendant as "Power Supply" throughout.

business. Stip. Undisp. Material Facts ¶¶ 2–3 (Dkt. 60–1). Customers order meals exclusively through Power Supply's website, and can elect to either pick them up at self-service refrigerators located within other businesses, or have the meals directly delivered to their homes for an additional cost of $7.95 per order. Id. ¶ 4.

On December 29, 2016, Moralez ordered prepared meals from Power Supply's website, and elected to pick them up from a Power Supply refrigerator located at a CrossFit gym approximately twenty miles from Moralez's home. Id. ¶¶ 16–17. Moralez suffers from rheumatoid arthritis and uses a wheelchair for mobility. Id. ¶ 15.

When Moralez arrived at the CrossFit gym, she contends she encountered a host of obstacles which "interfered with her full and equal access" to the facility, as well as her ability to retrieve her prepared meals. Pl. Mot. for Summ. J. at 5 n.2. Among these challenges was that her meals were located on a shelf within the Power Supply refrigerator that was more than forty-eight inches above the floor, and therefore beyond her reach. Stip. Undisp. Material Facts ¶ 18.

Moralez brought suit against the gym owner, property owner, and Power Supply, alleging violations of the ADA and its California state law analogs. See generally Compl. Moralez reached settlements with the other parties, and Power Supply is now the only remaining Defendant. Pl.'s Mot. Summ. J. at 5 n.2. She seeks injunctive relief requiring that Power Supply locate all meals for pickup within the ADA's "reach range" standard, which requires that items be placed no more than forty-eight inches above the ground, regardless of whether the meal purchaser is disabled. Pl.'s Mot. Summ. J. at 5; see also 36 C.F.R. § 1191 App. D (describing "reach range" technical standards). Alternatively, Moralez seeks injunctive relief requiring Power Supply to offer "a mechanism within the online ordering process to advise it that the consumer needs the meals located on shelves with the ADA's reach ranges," Pl.'s Mot. Summ. J; Compl. ¶¶ 29-30; see 42 U.S.C. § 12182(b)(2)(A)(ii). Moralez also seeks statutory damages of $4,000 under California law. See Pl.'s Mot. Summ. J; Compl. ¶¶ 34-46; see also Cal. Civ. Code § 52(a).

## II. DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

dispute of material fact is genuine if the evidence, viewed in the light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the evidence that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, that party must affirmatively show that no reasonable jury could find other than in the moving party's favor. Id. at 331 (Brennan, J., dissenting).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. The nonmoving party does this by citing to specific parts of the materials in the record or by showing that the materials cited by the moving party do not compel a judgment in the moving party's favor. Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

### A. ADA Claim

Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). To prevail on an ADA Title III discrimination claim, a plaintiff must show that: "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)–(b)).

The parties agree that the first element is met, Stip. Undisp. Material Facts ¶ 15, but vigorously dispute whether Power Supply's facility qualifies as a "place of public accommodation," such that it is subject to ADA regulation, see 42 U.S.C. § 12181(7), and whether Power Supply denied Moralez a public accommodation because of her disability. ; Def. Opp'n to Pl. Mot. for Summ. J. at 3-5 (Dkt. 77); Pl. Reply in Support of Mot. for

Summ. J. (Dkt. 78) at 2-8. Moralez advances two theories as to this third step: that Power Supply's facility was required to comply with the 2010 ADA Accessibility Guidelines' ("ADAAG") "reach range" requirement, which requires that certain types of facilities be located no more than forty-eight inches above the ground, 2010 ADAAG § 308; Pl. Mot. for Summ. J. at 9-11; Def. Mot. for Summ. J. at 6-10, and that Power Supply failed to make "reasonable modifications in [its] policies, practices, or procedures, when such modifications" to accommodate people with disabilities, as required by the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii); Compl. ¶¶ 29-30.

Power Supply responds that the ADA and California's state law analogs do not apply to its refrigerator because Power Supply does not operate a "place of public accommodation," and, in the alternative, its refrigerator is exempt from the ADA's design standards. See Def. Opp'n to Pl. Mot. for Summ. J at 3–8. Power Supply goes on to argue that it already provides an adequate mechanism within its online ordering process to accommodate disabled patrons, namely that a customer can call or email Power Supply and request that the item be placed on a lower shelf. Id. at 11.

### 1. Place of Public Accommodation

The ADA prohibits "any person who owns . . . or operates a place of public accommodation" from discriminating against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, [or] facilities" offered. 42 U.S.C. § 12182(a). It defines "public accommodations" as facilities operated by a private entity whose operations affect commerce, and which fall into one of twelve defined categories. Id. § 12181(7); 28 C.F.R. § 36.104 (2018). These categories include, as relevant here, an "establishment serving food or drink," a "sales or rental establishment," and a "service establishment." 42 U.S.C. § 12181(7).

Power Supply argues that because its refrigerator is "located inside a third-party business . . . it is not an 'establishment'" of the type contemplated by the ADA. Id. at 4. In support of this claim, Power Supply relies on Magee v. Coca-Cola Refreshments USA, Inc., 833 F.3d 530 (5th Cir. 2016), cert. denied, 138 S. Ct. 55 (2017). There, the Fifth Circuit held that a vending machine was not a public accommodation, because, the Fifth

4

Circuit concluded, "establishment" under § 12181 refers only to stores, not smaller units within those stores like vending machines. Id. at 534. It reasoned that, because § 12181(7) "uses the term 'sales establishment' following a list of retailers occupying physical stores," the term "establishment" was meant to refer exclusively to stores. Id.; see also Def. Opp'n to Pl. Mot. for Summ. J at 4-5. Like vending machines, Power Supply argues, its refrigerator is located within a third-party place of business that provides other services, rather than occupying an entire store itself. Def. Opp'n to Pl. Mot. for Summ. J at 4-5. So, it contends, this Court ought to conclude that its refrigerators are not "places of public accommodation." Id. at 5.

Moralez responds that this Court may not follow the suggestion of Magee because the Ninth Circuit's holding in Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104 (9th Cir. 2000), forecloses the result that Magee reached. Pl. Reply (Dkt. 78) at 4-8. Weyer defined a "places of public accommodations" as "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services." 198 F.3d at 1114. Power Supply's refrigerator, Moralez urges, meets this standard because a refrigerator occupies physical space and provides goods—premade meals—to the public. Pl. Reply at 3-4.

Moralez is correct. This Court is bound by the Ninth Circuit's conclusion that "places of public accommodations" are defined as "physical places" that provide public goods or services. Weyer, 198 F.3d at 1114. A refrigerator is a physical place, and while Congress's listed examples in § 12181(7)(B) describe stores, nothing about that list suggests that the inquiry into whether a facility is a place of public accommodation hinges on the size of the facility, rather than activities that occur there. To the contrary, the text of 42 U.S.C. § 12181(7)(B) defines "establishments" by their activities, not the size of their physical footprint, as in, for instance, "a restaurant, bar, or other establishment serving food or drink." Id. And nothing in Weyer indicates that the size of an "actual, physical place[,]" rather than whether those facilities are "places where the public gets . . . goods or services," is relevant to the analysis. See Weyer, 198 F.3d at 1113-15. Finally, in the case

5

of ambiguity, Congress has instructed that the scope of public accommodations "should be construed liberally, consistent with the intent of the legislation that people with disabilities should have equal access[.]" H.R. Rep. 101–485 (II), 100, 1990 U.S.C.C.A.N. 303, 383.

In light of this Congressional instruction and Weyer's definition of "places of public accommodation," this Court concludes that, as a matter of law, Power Supply's refrigerator is a "place of public accommodation," and thus subject to the ADA. Thus, this Court concludes that, as to step two of the ADA inquiry, "the defendant is a private entity that owns, leases, or operates a place of public accommodation." Molski, 481 F.3d at 730. The Court thus GRANTS summary judgment to Moralez on the question whether Power Supply's refrigerator is a place of public accommodation.

### 2. Reach Range Requirements

As a "place of public accommodation," Power Supply's facility must be designed to be "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1); accord Molski, 481 F.3d at 730. Whether a facility is "readily accessible" is defined, in part, by the 2010 ADAAG. See Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 945 (9th Cir. 2011). As relevant here, the ADAAG require that certain portions of facilities, including storage spaces, 36 C.F.R. § 1191 App. B at § 225, are built within a "reach range" of forty-eight inches to ensure readily accessible and usable facilities for disabled individuals. 2010 ADAAG § 308.3; 75 Fed. Reg. 56,236, 56,319 (Sept. 15, 2010); 36 C.F.R. § 1191 App. B; see also 42 U.S.C. § 12183(a)(1).

The parties agree that some, but not all, of the shelving in Power Supply's refrigerator is within that forty-eight inch reach range. Stip. Undisp. Material Facts ¶ 11. But the parties dispute whether the reach range requirement applies to Power Supply's refrigerator's shelving. Power Supply argues that its refrigerator is not a storage unit, but rather is self-service shelving, which is not required to comply with the ADAAG's reach range requirements. Def. Mot. Summ. J. at 7-10; 2010 ADAAG § 225.2.2. Moralez contends that the refrigerator qualifies as a storage space, and thus, "at least one of each type of [Power Supply's] storage must be within the reach ranges . . . however, it is

6

permissible to install additional storage outside the reach ranges." 2010 ADAAG § 225.2; Pl. Mot. for Summ. J. at 9.

The Court begins with Power Supply's contention that its refrigerator shelves are "self-service shelves" because customers pick up their pre-purchased items from the shelves; an employee does not retrieve customers' items for them. Def. Mot. Summ. J. at 9. Power Supply further urges that if the Court concludes that the refrigerator shelves are storage, then "all food in supermarket refrigerators or freezers . . . stored on those shelves while awaiting sale" would likewise constitute storage, rather than self-service shelving. Def. Opp'n to Pl. Mot. for Summ. J. at 9-10.

But Power Supply's argument misunderstands the nature of "self-service shelving." While Power Supply is correct that customers themselves retrieve the items from the refrigerator's shelves, customers do not arrive at Power Supply's refrigerator and browse through Power Supply's selection of available items, as customers in a supermarket do. See Stip. Undisp. Material Facts ¶¶ 4-8. And the ADAAG contemplates that self-service shelving is of the kind found in libraries, stores, and post-office shelves, which are all places in which customers typically select from a variety of available items, rather than picking up a pre-selected and pre-purchased item. See 2010 ADAAG Advisory § 225.2.2. Self-service shelving, thus, is best read to reference this type of open-selection shelves found in a "library, store, or post office," id., not merely any shelving where customers, rather than employees, take down an item.

Power Supply's facility is better understood as "storage." The ADAAG does not offer a definition of "storage," but it does provide a helpful list of "[t]ypes of storage," which "include, but are not limited to, closets, cabinets, shelves, clothes rods, hooks, and drawers." 2010 ADAAG Advisory § 225.2. In general usage, "storage" is often used to refer to the retention of a specific and individual item, as in a "personal storage unit." "Storage," then, is best read to cover areas that contain specific items. See 2010 ADAAG Advisory § 225.2.

The distinction between the placement of specific items in "storage" and the

7

placement of items generally available to the public on "self-service shelving" ameliorates Power Supply's concern that all refrigerated supermarket shelves could be viewed as storage. Def. Opp'n to Pl. Mot. for Summ. J. at 9-10. Supermarket refrigerator shelves allow customers to select freely from available items just as customers do from non-refrigerated supermarket shelves. And nothing in the distinction between self-service shelving, where customers are free to select from generally available items, and storage, where specific items are placed, turns on whether the facility in question is refrigerated. A refrigerated supermarket shelf, thus, would be, despite Power Supply's protestations to the contrary, properly deemed "self-service shelving."

By contrast, Power Supply's refrigerator shelves, from which customers pick up their pre-selected and pre-purchased meals, Stip. Undisp. Material Facts ¶¶ 4-8, are properly categorized as storage, not self-service shelving. Power Supply's refrigerator stores meals that are customer-specific, pre-selected and pre-purchased, placed on shelves while awaiting pickup, and are not available for other customers to purchase. See Stip. Undisp. Material Facts ¶¶ 4-8. Nor does anything in the ADAAG suggest that the fact that Power Supply facility is refrigerated alter this understanding. See 2010 ADAAG § 225.2. Thus, Power Supply's refrigerator is best understood as storage. And, as a result, "at least one of" Power Supply's facility "must be within the reach ranges . . . however, it is permissible to install additional storage outside the reach ranges." 2010 ADAAG § 225.2.

There is one further matter to address on this issue: whether Power Supply's "storage" area is properly construed as the shelves within the refrigerator or the refrigerator itself. Moralez appears to contend both that the refrigerator itself is "storage" and that the shelves within that refrigerator are "storage." See Pl. Mot. for Summ. J. at 10-11. Given that most of the items in the list of examples of storage provided in the ADAAG—"closets, cabinets, shelves, clothes rods, hooks, and drawers," 2010 ADAAG § 225.2—refer to a portion of a larger storage unit, rather than the full unit itself, the Court concludes the proper unit is the refrigerator shelves, rather than the entire refrigerator. The correct "storage" unit is thus the shelves inside the refrigerator, not the refrigerator as a

8

whole.

As a result, because the ADAAG requires only that "at least one of each type of storage must be within the reach ranges," and the parties agree that at least one shelf in Power Supply's refrigerator is within the forty-eight inch reach range, Stip. Undisp. Material Facts ¶ 11, the design of Power Supply's refrigerator does not violate the ADAAG. See 2010 ADAAG § 225.2. So, Power Supply's refrigerated shelving, and thus the design of its refrigerator, is not in violation of the ADA's design requirements. The Court thus GRANTS IN PART Power Supply's motion for summary judgment, as to Moralez's claim that the physical design of Power Supply's refrigerator violates the ADA.

### 3. Reasonable Modifications

The foregoing conclusion does not, however, end the case, or even Moralez's ADA claim. In addition to her ADA design claim, Moralez also alleges that Power Supply has failed to make "reasonable modifications in [its] policies, practices, or procedures" to accommodate people with disabilities, as required by the ADA. 42 U.S.C. § 12182(b)(2)(A)(ii); Compl. ¶¶ 29-30. However, she has not sought summary judgment on this issue, instead instructing the Court that "the parties can craft an injunction whereby [Power Supply] offers a mechanism within the online ordering process to advise it that the consumer needs the meals located on shelves with the ADA's reach range." Pl. Mot. for Summ. J. at 13. Power Supply asserts that if Moralez "had actually needed help reaching her order, she could have asked," Def. Mot. for Summ. J. at 10, but offers no support in the record for this claim. Id. It further asserts that customers seeking ADA accommodation can call or email Power Supply and request that the item be placed on a lower shelf. Def. Opp'n to Pl. Mot. for Summ. J at 11. But, it provides no support in the record for this claim, nor any legal basis on which to conclude that this qualifies as a "reasonable modification." See id.

In light of Power Supply's unsupported claims and Moralez's failure to offer a basis for summary judgment on this issue, the Court cannot conclude that "there is no genuine dispute as to any material fact" that would support summary judgment to either party on

9

Moralez's reasonable modifications claim. See Fed. R. Civ. P. 56(a). As a result, this Court cannot conclude, as a matter of law, whether Power Supply violated the ADA, because, though the design of Power Supply's refrigerator did not violate the ADA's design requirements, there remains a "genuine issue of material fact" as to whether Power Supply could have made "reasonable modifications" to its website or ordering process to accommodate people with disabilities. The Court DENIES summary judgment as to Moralez's reasonable modifications ADA claim to either party.

### B. California Law Claims

Moralez has not sought summary judgment as to her two California anti-discrimination law claims. See Pl. Mot. for Summ. J. at 1. Power Supply has only sought summary judgment on these claims on the basis of its arguments discussed above. Def. Mot. for Summ. J. at 1. The parties agree that "California access laws are identical to federal law with regards to the self-service shelving reach range requirements." Pl. Opp. to Def. Mot. for Summ. J. at 13; Def. Mot. for Summ. J. at 1; accord Cal. Code. Tit. 24, §§ 11B-225.2.2, 11B-904.5.1. As such, this Court GRANTS summary judgment Power Supply on whether the design of its refrigerator is compliant with California law.

However, as discussed above, there remains uncertainty as to whether Power Supply could have modified its website in order to provide Moralez with a reasonable accommodation. Nor does either party offer any basis specific to California law on which this Court could grant summary judgment on this issue. See generally Pl. Mot. for Summ. J.; Def. Mot. for Summ. J. Thus, the Court DENIES summary judgment to either party on this aspect of Moralez's state law claims. See Celotex Corp, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion.").

## III. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and the Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Dated: September 6, 2018



CHARLES R. BREYER
United States District Judge